We'll turn now to 23-1360, excuse me, the State of Jason Waterhouse v. Direzza. Mr. Mueller. Good morning, and may it please the court, my name is Norman Mueller. I represent the estate of Jason Waterhouse through his personal representative and his daughter, Amber, who is in the courtroom this morning. At council table is trial counsel and co-counsel, Tim Galluzzi. The issue before the court today is whether the magistrate judge committed error in granting summary judgment on the issue of qualified immunity in this case. And there was error in this case because there are many disputed issues of material fact. First, as to whether the officer, the defendant officer, Officer Dressel, subjectively believed that Mr. Waterhouse had a stick in his hand when he came out of the bedroom and headed toward the stairs. And secondly, if he did have that subjective belief, whether that was objectively reasonable. And there are disputed issues on both of those issues, disputed issues of fact. So, the trial court also concluded that the, also granted summary judgment because the law was not clearly established in this area. We think that was error, it's addressed in the briefs. I want to focus on the first issue for, due to my time limits in this case. The Officer Dressel said that he believed and he saw a stick in Mr. Waterhouse's hands. It is undisputed for purposes of the summary judgment motion that he was not, that Mr. Waterhouse was not armed, that he did not, in fact, have a stick. So the question is, the first question is whether the officer actually subjectively believed that and whether he was being truthful. And there's a lot of reasons that a jury could find, in fact, that the officer was not being truthful. Well, this is a very unusual situation. Why is the weapon so important? This was when the place was on fire, the other officers were fleeing, could, having breathing problems. If Mr. Waterhouse just had a wrestling match with an officer, that could be fatal in that circumstance. If it was reasonable, and maybe you think it would not be, but if it was reasonable to believe that this fellow was charging at the officers, that was a lethal threat, whether he had an officer, or whether he had a weapon or not. And wouldn't it be reasonable to address that with lethal force? Not with lethal force, under the facts of this case. What if he charged them and threw them to the ground and they could overcome him? Well, that would- Didn't have any, I mean, the guy had been violent just a couple minutes before when he rammed a stick into the wall, maybe something more substantial than a stick. And that's, they have to protect themselves. They're gonna die if they get in a wrestling match in this situation. Why was that not a reasonable belief, regardless of whether Mr. Waterhouse had any weapon? Well, first of all, he didn't get close enough to engage in a wrestling match. And secondly, Officer Dressel- How far was he from them, four, five, five, six feet? It was, the actual distance at the time is undetermined. It was confined. Best estimates, I think, from various witnesses was six to eight feet. But what is crucial, Judge Hartz, is that Officer Dressel admitted that if he had known that there was, let me step one step back. The officer said, I shot because I thought he had a weapon. That is the reason I used lethal force. Is the test subjective, or is it what a reasonable officer would do? If it was reasonable for, if a reasonable officer would have shot in that circumstance, does it matter what that particular officer was thinking? I thought these are, maybe I'm wrong, I thought these were objective tests. Well, it is objective reasonableness at the end of the day, but in this case, when you have the officer saying, I would not have shot Mr. Waterhouse in the back, number one, if I'd have known that he was not armed, and number two, if I'd have known Officer Williams was right beside me. Officer Williams was right beside him. But that's a, well, those are objective, those are subjective matters. Well, they are objective facts of this case. Well, what's in his mind, am I wrong that it's irrelevant what's in his mind? It's what a reasonable officer would do in the circumstances? Well, it is not irrelevant. Am I wrong? No, objective. It's what a reasonable officer would do in the circumstance, what a reasonable officer could do in the circumstances. And the state of mind of the officer is not an element in this claim. Am I wrong about that? Correct me if I'm wrong, but that's what I thought. In the First Amendment issues, we don't care what the officer was thinking. He may have the wrong reason for arresting somebody, but if there's probable cause to arrest on another ground, then it's a valid arrest. Even if the officer thought something wrong, was incorrect in deciding what there was probable cause for. That's what I thought. Objective reasonableness is the excessive force standard, but the magistrate judge ruled that and found, based on disputed issues of material fact, that the officer in this case subjectively believed, and that's part of her ruling. She spends a lot of time. This is de novo. We really don't care what happened in district court when we're reviewing the summary judgment, do we? Well, I guess you do care, but. But the review is de novo. Yes, yes, we have respect for the lower court decision. That's true. But our review is de novo. So the district court could have totally wrong reasons for granting summary judgment, but our review is de novo. Again, it's the result of, well, it's similar. So I don't think we should, we're bound by any findings by the district court that we think are irrelevant, are we? No, this court's review is de novo. So address my first question, because this is what's so different to me, at least in this case, and maybe I'm missing something. Normally, when you shoot somebody, they've got a deadly weapon they're gonna kill you with or seriously harm you with. Here, you didn't need a deadly weapon to endanger, gravely endanger, endanger the lives of the officers because of where they were. They're in a confined space that's on fire. And the other officers, there were six officers there, as I recall. Four were running up the steps at the time. They're not gonna help him. If this guy, who's been enraged and acting crazy for quite some time, they've been negotiating with him for over an hour, just a few minutes before, he slams something through the wall and he's coming toward them. And if he's eight feet away, that's still pretty close. It doesn't take very long to cover eight feet. And if he knocks down an officer, that officer's life is in danger. Am I missing something? Well, I believe this, under the totality of the facts in this case, it was not objectively reasonable to use lethal force on Mr. Waterhouse, who, number one, was unarmed, and number two, another officer who had a complete view of the situation, said, was heading towards the stairs. You're talking about the officer looking through the window. Yes. And aren't we supposed to evaluate these from the officer in question's perspective? He's in the smoke-filled room. He's down there with the fellow who's acting crazy, not safely outside the window. Well, that's true, but... Okay, let me ask it this way. What do you think the officer could do, what conduct would have been objectively reasonable? Do you think he had to wait until such time as he saw if this person ran up the stairs or instead took two more lunges and strangled him? What I think he should have been done is what he admitted he would have done, which is, and I believe that is what is objectively reasonable. You're back to subjective. You're talking about what he thinks should have been done. What Judge Hart's and what I'm talking about is reasonably objective conduct, which is, does he have to wait? Does he have to wait one more step? Does he have to wait two more steps? Does he have to wait to make sure that the person has this rod that he's been jamming through the wall, that he doesn't have a broken piece that he's gonna break his skull with? At what point can he do something other than cower, in the back, shooting in the back? Well, of course, the shooting in the back, that's a little bit misleading as far as the man had run from the room directly toward them with his front and then been struck by a beanbag. And so his body turned, right? And there was firing of the weapon as well as the beanbag at the same time. You're suggesting he was running up the stairs and got shot in the back. That's not the facts. I think a jury could conclude that from the facts of this case. Why would he be shot in the back? Would he be running back into the room? No, because he had turned going up the stairs and where the officer was located was to the side. It was necessary for Mr. Waterhouse, who a jury could find, thought, number one, the officers were out because the officers came down and within a minute there were verbal orders. Let's leave, let's get upstairs. They could still see, but they were bothered by the smoke and they were also bothered by the pepper balls that had been sprayed there earlier. So a jury could quickly find, clearly find that Mr. Waterhouse himself, overcome by smoke and pepper balls, was headed outside, did not know, headed up the stairs, did not even know that the officers were still in the room. I don't know that you've answered the question, which is, what would a reasonable officer, what conduct would be reasonably objective? Did he have to wait? You're saying he couldn't fire then. Could he have ever fired? He could not have fired when he had right beside him another officer with non-lethal force and with an unarmed victim, in this case, trying to get out of the smoke-filled room. Yes, he could not employ lethal force when he himself said, I wouldn't have had to if I'd have known he was unarmed and if I'd have remembered, if I realized that Officer Williams with his beanbag shotgun was sitting, standing right beside me. How many shots did he fire from the beanbag shotgun before the lethal shot? It is probably two. I think there's evidence that there were two beanbags. He may have fired three, but I think the evidence shows that there were beanbags, two of them, and it looks like Mr. Waterhouse was hit by one by a bruise from the autopsy photos. And where did the bullets end up? Weren't they embedded in the doorway to the other room or in that other room? Is that the only evidence of where the bullets that were fired by the officer went? There are casings behind him. There is a bullet fragment in the bedroom. That's correct. That's correct. There's no ballistic evidence or no expert testimony about how the bullets could have traveled, where the shots could have been fired. So I see that I'm down to 35 seconds, so I'd reserve my 35 seconds for rebuttal. Thank you. Mr. Freeman.  Good morning, Your Honors. Patrick Freeman on behalf of Sergeant DeResa. And I think the court has kind of hit the nail on the head with the analysis here. The objectively reasonable standard that Sergeant DeResa is subject to in terms of his actions is based upon the undisputed facts and the facts that as the court has basically laid out in the questions to appellant counsel. And if we look to that objectively reasonable standard, it's incredibly important that we first look to qualified immunity and the principle of qualified immunity and why it's important here. And the reason that the importance of qualified immunity is because it is a principle that is dictated for just this circumstance, where you have officers in an inherently dangerous, chaotic, incredibly, you know, quickly developing situation in the basement of a home that has been lit on fire, where it is undisputed that when they went down in an effort to locate the fire, try to put out the fire and try to, you know, continue to negotiate with the Mr. Waterhouse, they quickly learn that this fire is beyond their capabilities and beyond their ability to control it. And so then they are placed in this situation where all of the officers are trying to get out and then you have Sergeant DeResa who was assigned as the lethal cover and he's the last person who's in the basement, making sure that this person who's been acting erratically, who's been using provocative, threatening language during the course of all of this is not going to attack any of the people who are still in the basement or are trying to exit the basement. And so- Counsel, you just a moment ago talked about this chaotic scene and how, you know, it was quickly developing and as you know, and you cite in your brief, the excessive force case law often talks about officers having to make split second decisions. So time is an important factor as we look at what a reasonable officer would do. The estate argued that Sergeant DeResa had ample time. The district court found that to be invalid logic. You argued in your brief that there was, quote, so little time for Sergeant Drusilla to evaluate the threat that Waterhouse posed. Here's my sticking point. Sergeant DeResa himself says otherwise. On the joint appendix at page 773, he was asked about his ability to determine whether or not Mr. Waterhouse was armed and he was asked specifically. So that means you had enough time to conclusively determine he was armed and he says yes. So even though we may not look subjectively what he believed, but objectively, if one piece of the evidence is from the shooter himself is saying I had plenty of time to evaluate his threat and whether he was armed, how do we resolve that conflict? Because just Sergeant DeResa is answering that question in context, which is I had enough time to evaluate whether or not he was armed because I looked in his hands and I saw that he was armed. And that's an objectively reasonable belief for an officer in Sergeant DeResa's situation because less than a minute before Sergeant DeResa is charged by Jason Waterhouse, officers are saying they see Jason Waterhouse taking that stick, putting it through the wall. In fact, Agent Williams, who's standing right next to Sergeant DeResa says even though he didn't see anything in his left hand, he believed the entire time that Jason Waterhouse still had this rod, cylindrical object in his hands despite the fact that he didn't see it in his left hand. And so when Sergeant DeResa's answering that question, did you have enough time to consider whether or not he was armed? The answer was, yeah, because I looked in his hands and I saw that he was armed. And so the question if asked in the alternative, if you didn't see anything in his hands, did you have enough time to accurately assess whether or not he was armed, whether or not he had something behind his back, whether or not he had something in his pockets, whether or not he said something in his, like holstered into his pants. The answer to that is objectively no. And Sergeant DeResa actually answers that question in the affirmative if he didn't believe, if he wasn't under the impression that he had the stick in his hands when he came at Sergeant DeResa, he said that he did not have enough time to affirmatively evaluate whether or not Jason Waterhouse was armed in this situation. And I think that that's most important when we look at the subjectively reasonable standard, but I think it's also important when we're looking at the question of clearly established. And when we're talking about clearly established, the district court found that there is no case law on point that would put Sergeant DeResa or an officer, any officer in Sergeant DeResa's position that they would put them on notice that the actions of Jason Waterhouse did not warrant lethal force in this situation. That that's important to know because if we look at the case law in this area, we have the three areas of the case law that we need to evaluate whether or not put him on clearly established notice, which is 10 circuit cases. There are no 10 circuit cases that are directly on point for this analogous of a situation. But why isn't our precedent that says an officer may not use excessive force unless they reasonably believe that the person poses a serious threat to the officer or to other persons? I mean, that's a clearly established standard, right? It is. So why can't that meet the second prong of qualified immunity here? Because in this circumstance, the Mr. Waterhouse very objectively and undisputedly posed a threat. Yeah, but that goes to the first prong, qualified immunity. So if we agree that the law is clearly established and that's the standard that officers know, then we look to see, well, did they violate the standard? That becomes a more case-specific inquiry, right? It does. But the question is on the clearly established prong is whether or not any reasonable officer in Sergeant DeRessa's position is on notice that he would not be allowed to use lethal force in this situation and that that would be a violation of the law. And there is no clearly established law that says when you're in a situation, you're in a chaotic burning building that ends up with Agent Williams having his hair singed by the heat of the basement. Yeah, but all of our cases have such scenarios where officers are tasked with making difficult decisions in what could be described as a chaotic environment. I mean, all the times where guns are drawn, that description of the environment would apply. So I guess I'm struggling with the argument that you're making as I hear it to say, well, there's no clearly established law here, where I guess I was thinking that your argument was, well, even if we agree that this is the standard for an excessive force claim, that's clearly established both by Supreme Court and 10th Circuit precedent. Here, based upon the objective review, Sergeant DeRessa didn't violate Mr. Waterhouse's rights because of all the reasons that you're otherwise discussing about the reasons why he made the decision he did. And I think that that is my argument. I'm arguing that both prongs of qualified immunity fail or there is no evidence to support either prong of the qualified immunity example, either clearly established or objectively reasonable. And I think if we look at objectively reasonable, I think it's important because if we're looking at objectively reasonable, I think Judge Hartz and Judge Phillips, you both discussed the factual scenario and whether or not the objectively reasonable or the objectively reasonable belief of an officer in Sergeant DeRessa's situation, whether that lines up with the facts. And I think one of the most important facts is there's this continuance by the appellant and by the plaintiff to argue that the act of being shot in the back somehow proves that he was running away from the agent. There is no facts within this scenario. There's no factual evidence that's ever purported that says that he is running away from Sergeant DeRessa at the time that he is fired upon by Sergeant DeRessa while simultaneously being fired upon by Agent Williams. And so if we look to the objectively reasonable standard, obviously we go through the Granby-Conner factors and we know that the Granby-Conner factor, the severity of the crime, that weighs in favor of the defendant in this case. And then the all-important second factor, we then look at the estate v. Larson factors. What crime are you talking about, arson? Arson, yes. And the district court found that it would be objectively reasonable to believe that Mr. Waterhouse committed arson within this scenario. And then there's the case law that says that arson is a serious crime that warrants. But if we look to the estate v. Larson factors, I think the most important thing that we can describe is all of the evidence indicates that when Sergeant DeRessa is firing upon Jason Waterhouse, he is charging at him. And even Agent Cook, who's outside the window, who's got the most sanitized view of everything that's going on and whom appellant relies on heavily for the factual dispute, his response is the door whips open. He does not, and Sergeant DeRessa did not have enough time to make a determination because Jason Waterhouse is running at him quickly. And just pause there. When you say charging at or running at, I hear a connotation that that's purposeful, that he's trying to get him, but it doesn't have to be, does it? It's just a matter of direction. Right. Even if he didn't see the officer. Correct. And I think that, I'm not arguing that his actions are purposeful. I'm arguing that- Well, I'm saying they don't have to be. And I agree with you. I really appreciate that point. Any reasonable officer in Sergeant DeRessa's situation, seeing a person who's coming at them quickly, whether or not that person is intending to veer off the path at the last minute or go in some other direction, Sergeant DeRessa has to take into account the fact that not only is this person who has made numerous threats, who has used incredibly provocative language towards agents during this more than hour-long standoff, is charging at him after he has seen him less than a minute before putting a large weapon through a wall. And so the idea that it is objectively unreasonable for Sergeant DeRessa or an officer in Sergeant DeRessa's position to believe that Mr. Waterhouse was armed at the time that he charged towards officers, there's just no facts to support that. And I think the issue that you run into on the objectively reasonable standard is that in this split-second decision that an officer in Sergeant DeRessa's situation has to take into account all of the things, the totality of the circumstances, he has, what has been described as, less than two seconds to make a decision about what he thinks Jason Waterhouse is going to do as he's charging out of that back bedroom. And there's no evidence to suggest that Jason Waterhouse's intentions in these moments was to go up the stairs. And the district court correctly points out that when he comes out of that room, he does not make any sort of affirmative statement. He's not saying, I'm coming out of this room because it's too hot. I gotta go upstairs. Okay, I'm willing to comply. Can we get out of here? I'm coming out with my hands up. There's nothing affirmative on behalf of Jason Waterhouse to put off a reasonable officer in Sergeant DeRessa's situation on notice that at that moment, the actions of Jason Waterhouse should be taken as any way but hostile and is undisputed within the factual record because if we look to Appellant's argument, their argument is basically, well, Agent Cook says, it looked to me like he was gonna go up the stairs and peacefully kind of go that way, which isn't actually what Agent Cook said. Agent Cook said when he whipped open the door and was running out very quickly, it looked to me like he was gonna button hook and go up the stairs. What does the record show as far as why DeZera and Williams were still in the basement and whether they intended to remain there? Okay, and the answer to that is that they were in what is called a police stack, essentially, and that DeRessa was the final lethal cover sergeant who was down there and had been tasked with that job. And so they were the two last cover officers who were covering for everybody as they got up the stairs. Agent Williams was the next to go. DeRessa actually believed that Agent Williams wasn't present in the basement with him at the time that the shooting occurred because he'd actually told Agent Williams that he would be the last person in the basement. So the intention was that everyone was getting out, but they were trying to get out as safely as they possibly could in what this court has identified as an incredibly dangerous, chaotic, terrible situation. That is exactly why qualified immunity exists. So in these circumstances, there is no question that both Sergeant DeRessa's actions are objectively reasonable if we look at it from the standard of an officer who is in this chaotic, dangerous situation. I think Judge Hart's, you know, kind of hit the nail on the head right at the beginning when he said any sort of wrestling match, a tackling situation, even if he doesn't have a weapon in his hands, and that's exactly why we stipulated that he was not armed at the time because in this situation, it is objectively reasonable for Sergeant DeRessa to believe that a wrestling match would have killed him. What if he would have saundered out of the room rather than burst through the doorway? And I think that that's a completely different analysis. That's why I ask. And the question is, if he comes out slowly, that's the kind of analysis where we're talking about maybe an objectively unreasonable conduct. We ask the court to affirm. Thank you. Thank you. Do we have some time? Not a lot. 32 seconds, Your Honor. Officer Dressel's own testimony establishes what was objective reasonable. If you have backup and the person is not armed, then what you do is you take him into custody. That's what Dressel said he would have done if he'd have had the facts right and he didn't. And that's why this is a jury question. Thank you, counsel. Case is submitted. Counselor excused. We're gonna take a short.